IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

GLADES PHARMACEUTICALS,
INC.,

    Plaintiff,

      v.

                              CIVIL ACTION FILE
                              NO. 1:06-CV-1244-TWT

MYLAN PHARMACEUTICALS,
INC.,

    Defendant.

ORDER

This is a declaratory action.  It is before the Court on the Defendant's Motion
to Dismiss or, in the Alternative, Stay the Proceedings and Compel Arbitration [Doc.
4], the Plaintiff's Motion for Sanctions [Doc. 13], and the Plaintiff's Motion for
Reconsideration [Doc.18].  For the reasons set forth below, the Defendant's Motion
to Stay is GRANTED, the Plaintiff's Motion for Sanctions is DENIED, and the
Plaintiff's Motion for Reconsideration is DENIED.

I. BACKGROUND

This case arises out of an employment agreement between the Defendant,
Mylan Pharmaceuticals, Inc., and its former employee, Robert Cunard.  Mylan
develops, manufactures and markets a wide range of generic pharmaceutical products.

In 1999, Mylan hired Cunard as its Manager of Pricing Contracts.  In 2001, Cunard was promoted to Vice President of Marketing and in 2005 was elevated to the position of Senior Vice President for Marketing and Strategic Development.

During his employment, Cunard had access to the Defendant's confidential information and trade secrets.  In 1999, Cunard signed an agreement acknowledging that Mylan possessed confidential information that would be disclosed to him over the course of his employment.  In 2003, after assuming additional responsibilities, Cunard executed an Executive Employment Agreement.  Both the 1999 and 2003 Agreements contained covenants that restricted Cunard's post employment activities.  The 2003 Agreement also included a "Choice of Law and Forum" clause stipulating that the agreement would be governed by the laws of Pennsylvania.  This clause further stated that "[a]ny controversy, dispute or claim arising out of or relating to this Agreement, or the breach thereof, including a claim for injunctive relief, or any claim which, in any way arises out of or relates to, Executive's employment with the Company or the termination of said employment...shall, at the Company's option, be resolved by litigation or arbitration..." (Compl., Ex. 2, ¶ 18.)     On March 30, 2006, Cunard signed an amendment to the 2003 Agreement, which extended the terms of the 2003 Agreement through March 31, 2008.

On April 7, 2006, Cunard gave 90 days notice of his departure from Mylan, informing the Defendant that he was accepting a position at Glades Pharmaceuticals, LLC, as its Senior Vice President of Commercial Operations.  On April 28, 2006, the Defendant's Chief Legal Officer and General Counsel met with Cunard.  During that meeting, Cunard was given a memorandum stating that Mylan lacked sufficient information to consent to his proposed employment with Glades and asked that he provide additional information about Glades' business and the duties he would perform there.  Mylan then terminated him effective May 5, 2006.

On May 9, 2006, Cunard and Glades filed this lawsuit in the Superior Court of Gwinnett County, Georgia, seeking to have the non-compete provision in Cunard's 2003 Agreement declared null and void and requesting an injunction prohibiting Mylan from attempting to enforce these restrictions anywhere in the United States. That same day, Mylan filed a Demand for Arbitration with the American Arbitration Association ("AAA").  On May 15, Mylan then moved the Georgia state court to compel arbitration.  The next day, Mylan filed a civil action against Cunard in West Virginia, and moved for an order compelling Cunard to arbitrate and prohibiting him from proceeding any further in the Georgia action.  The West Virginia court entered a temporary restraining order on May 17, compelling Cunard to arbitrate his dispute in accordance with the arbitration provision in the 2003 Agreement and requiring him

to dismiss and not participate in the Georgia action.  Cunard voluntarily dismissed his claims in this case the next day.  However, Glades renewed its emergency motion asking the Georgia court for a temporary restraining order and injunction declaring the post-employment restrictions in the 2003 Agreement unenforceable.  Because Cunard's dismissal created complete diversity between the parties to this action, the Defendant removed the lawsuit to this Court.  At a June 5, 2006 hearing, this Court denied the Plaintiff's motion for a temporary restraining order.

## II. DISCUSSION

### A. Motion to Stay

The Defendant has moved for this Court to either dismiss this lawsuit or stay the proceedings, as it contends that these same claims are currently subject to arbitration in West Virginia.  Under the Federal Arbitration Act ("FAA"), if the matter in dispute is within the scope of a valid arbitration agreement and a party applies for a stay pending arbitration, the Court must stay the proceedings.  9 U.S.C. § 3.  Here, Glades seeks a declaration as to the enforceability of the non-compete covenant in Cunard's contract.  If the Plaintiff's claim is subject to a valid arbitration clause, however, the Court is required to refer this claim to arbitration even if the underlying agreement might be declared invalid.  Hydrick v. Management Recruiters International, Inc., 738 F. Supp. 1434, 1435 (N.D. Ga. 1990); see also Bishop

Contracting Co. v. Center Bros., Inc., 445 S.E.2d 780, 781 (1994) ("Georgia courts are required to uphold valid arbitration provisions in contracts."). Thus, there are two issues: (1) is the arbitration provision in Cunard's employment contract valid; and (2) if so, is this dispute within the scope of that provision. See AT & T Techs., Inc. v. Commc'ns Workers of America, 475 U.S. 643, 649 (1986). If these questions are answered in the affirmative, the Court is required, pursuant to 9 U.S.C. § 3, to stay this proceeding pending arbitration. If not, the Plaintiff may proceed with its claims in this forum.

### 1. Validity of the Arbitration Clause

The Plaintiff makes several arguments against the validity of the arbitration clause. Glades first contends that the clause is both procedurally and substantively unconscionable. It claims that the contract is substantively unconscionable because it gives the Defendant the option of filing its claims in court, while requiring Cunard to submit all claims to arbitration. The Plaintiff contends that, pursuant to the choice of law provision in the contract, Pennsylvania law applies. A federal court sitting in diversity, however, must apply the forum state's choice of law rules to determine whether a contract is enforceable. See Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 496-97 (1941). As stated by the Georgia Court of Appeals in Continental Ins. Co. v. Equity Residential Props. Trust, 255 Ga. App. 445 (2002), a contractual

choice of law provision "does not control the procedural law applicable in the forum state. The rule of lex fori dictates that Georgia courts will apply Georgia law in governing procedural or remedial matters."  The Court must thus apply Georgia law. And here lack of mutuality of remedy does not render a contract substantively unconscionable.  See Crawford v. Results Oriented, Inc., 273 Ga. 884 (2001); Saturna v. Bickley Constr. Co., 252 Ga. App. 140, 141 (2001).

The Plaintiff also claims that the contract is procedurally unconscionable because it was "thrust upon Cunard one day before the expiration of the 2003 Agreement."  (Pl.'s First Resp. to Def.'s Mot. to Dismiss, at 20.)  In determining procedural unconscionability, Georgia courts look at the following factors: "age, education, intelligence, business acumen and experience of the parties, their relative bargaining power, the conspicuousness and comprehensibility of the contract language, the oppressiveness of the terms, and the presence or absence of a meaningful choice."  NEC Techs., Inc. v. Nelson, 267 Ga. 390, 392 (1996). Demonstrating mere inequality in bargaining power is insufficient to invalidate an arbitration agreement.  Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 32-33 (1991).  Glades contends that because the Defendant informed Cunard that payment of his bonus was contingent upon him agreeing to extend the 2003 Agreement, he was left without any meaningful alternative.  Cunard, however, was a sophisticated and

highly compensated executive for the Defendant.  The Court finds, moreover, that this was a valid and clearly stated agreement to which Cunard had previously consented. Requiring Cunard to sign an amendment to extend that agreement in order to receive further benefits did not render the agreement procedurally unconscionable.

The Plaintiff next alleges that the arbitration clause had expired by the time of Cunard's alleged breach.  The 2003 Agreement existed between Cunard and "the Company" and remained in effect through March 31, 2006.  (Compl., Ex. 2, ¶ 2). According to Paragraph 8(e), the 2003 Agreement "may be extended or renewed upon mutual agreement of [Cunard] and the Company," (Id., ¶ 8), and the Company was defined as "Mylan Pharmaceuticals Inc."  (Id., ¶ 13.)  When the amendment to the employment contract was then executed extending that agreement through March 31, 2008, it was signed not by Mylan Pharmaceuticals, but by "Mylan Laboratories Inc." The Plaintiff contends that because only Mylan Pharmaceuticals Inc. had the capacity to extend the agreement, the amendment was a nullity.  The Plaintiff cites TranSouth Financial Corp. v. Rooks, 269 Ga. App. 321 (2004), for the proposition that the party seeking to enforce an arbitration contract bears the burden of showing assent to the contractual terms.  (Pl.'s Resp. to Mot. to Dismiss, at 23.)  There, the Georgia Court of Appeals held that an amendment to an automobile financing loan agreement, which

included an arbitration clause, could not be enforced in part because the second page of the document had not been signed by either party.

The Court finds the Plaintiff's argument unpersuasive, however. In <u>Rooks</u>, it was clear that the parties had not consented to arbitrate their disputes. Here, by contrast, the evidence shows that Cunard assented by signing the 2006 amendment and continuing his employment with the company. <u>See</u> <u>Dominy v. National Emergency Servs, Inc.</u>, 215 Ga. App. 537, 538 (1994) (<u>overruled on other grounds by AGA, LLC v. Rubin</u>, 243 Ga. App. 772, 774 (2000)) (concluding that an employee had assented to the continuing terms of an employment contract by receiving payment for services and other benefits consistent with that agreement). The fact that a representative of the subsidiary of Mylan Pharmaceuticals signed that amendment does not render it null and void. Indeed, in the original agreement, Mylan Laboratories was included under the heading of "the Company" as a party to whom any notice should be sent at the same address. (Compl., Ex. 2, ¶ 13.) In the amendment, Mylan Laboratories was then referred to as "the Company." Because Cunard signed the amendment to continue his employment and received valuable consideration under the new agreement, the Plaintiff cannot now claim that the contract is null and void.

Glades finally argues that the Defendant has waived its right to compel arbitration by asking the West Virginia state court to litigate the merits of its claim that Cunard violated the non-compete agreement.  A party is deemed to have waived its right to compel arbitration when it seeks relief in court beyond that which is necessary to maintain the status quo.  See, e.g., WorldSource Coil Coating, Inc. v. McGraw Const. Co., Inc., 946 F.2d 473, 477-78 (6th Cir. 1991); Sweater Bee by Banff, Ltd. v. Manhattan Indus., Inc., 754 F.2d 457, 461 (2d Cir. 1985).  The Plaintiff points to BellSouth Corp. v. Forsee, 265 Ga. App. 589 (2004), as support for its argument that under Georgia law the Defendant has waived its right to compel Cunard and Glades to arbitrate this dispute.  In Forsee, a telecommunications executive resigned in order to take a position with a competitor.  The former employer filed a complaint alleging that by accepting this new position, the executive had violated a covenant not to compete in his employment agreement.  The plaintiff thus invoked the jurisdiction of the state court to enjoin the executive from accepting this employment. After conducting a hearing, the trial court found the covenant in the executive's employment contract to be unenforceable.  The plaintiff then moved to compel arbitration pursuant to the contract, which the trial court granted but not with regard to any controversy arising out of the covenant not to compete.  On appeal, the Georgia Court of Appeals held that because the trial court was asked to make a preliminary

determination as to the covenant's enforceability and found it to be unenforceable, the trial court was then authorized to make a definitive ruling on that issue.  Id. at 597.

The Court finds Forsee inapplicable here, however, because Mylan has never placed its non-compete clause at issue in the West Virginia case and that court has never ruled on its enforceability.  Indeed, in its two Preliminary Injunctive Orders, the West Virginia court only preserved the status quo by temporarily restricting Cunard from acting in any way that would violate the 2003 Agreement.  (Def.'s Reply to Pl.'s Resp. to Def.'s Mot. to Dismiss, Exs. B-14; B-22.)   As the Plaintiff has not presented–and this Court cannot find–any valid arguments to the contrary, the Court holds that the arbitration clause in Cunard's employment contract is valid and enforceable.

## 2. Scope of Arbitration Clause

The second issue for the Court's determination is whether this dispute is within the scope of the arbitration agreement.  The "Choice of Law and Forum" provision expressly provides for arbitration of any "controversy," "dispute," or "claim" that "in any way arises out of or relates to, Executive's employment with the Company." (Compl., Ex. 2, ¶ 18.)  By the plain meaning of this language, any dispute involving the enforceability of a provision of this employment contract necessarily "arises out of" and "relates to" Cunard's employment with Mylan.

That is not the end of the inquiry, however.  Because Glades was not a party to the arbitration agreement, the Court must also determine whether this provision should apply to its claims.  Both federal and Georgia courts have found that a non-signatory to an agreement containing an arbitration provision is required to arbitrate claims that relate directly to or presume the existence of the agreement that incorporates that provision.  See A.L. Williams & Assocs., Inc. v. McMahon, 697 F. Supp. 488, 493-94 (N.D. Ga. 1988); LaSonde v. CitiFinancial Mortg. Co., Inc., 273 Ga. App. 113, 114 (2005).  In LaSonde, for example, a husband and wife filed a lawsuit alleging that a mortgagee had wrongfully foreclosed on their property.  LaSonde, 273 Ga. App. at 113.  The husband initially obtained a loan from the defendant to purchase a piece of property, signing a promissory note that included an arbitration clause.  He subsequently transferred an interest in the property to his wife.  When the defendant later foreclosed and the plaintiffs filed suit alleging that the defendant had breached the terms of the promissory note, the mortgagee moved to compel arbitration as to both of them.  The Georgia Court of Appeals found that the wife's claims must be submitted to arbitration because they "relate directly to-or presume the existence of-the promissory note that incorporates the arbitration agreement."  Id. at 115.  The court further explained that the theory of equitable estoppel required that the non-signatory's claims be arbitrated because "a party cannot have it both ways; it cannot

rely on the contract when it works to its advantage and then repute it when it works to its disadvantage." Id. (quoting A.L. Williams, 697 F. Supp. at 494). The court found this conclusion appropriate, moreover, because to permit resolution of the husband and wife's claims in different forums might "result in varying decisions, discreditable to the administration of justice." Id.

Glades contends that its claims are distinct from those of the non-signatories in both LaSonde and A.L. Williams in that it does not attempt to benefit from any part of the employment agreement containing the arbitration provision. As further support, the Plaintiff cites Zimmerman v. International Cos. & Consulting, Inc., 107 F.3d 344 (5th Cir. 1997), which held that "the mandatory stay provision of the FAA does not apply to those who are not contractually bound by the arbitration agreement." Id. at 346. In Zimmerman, several workers suffered injuries while aboard their employer's vessel and attempted to file a complaint for damages in federal court against their employer's insurer. The insurer argued that because its agreement with the employer included the right to submit coverage disputes to arbitration, the workers were also required to arbitrate their claims. The Fifth Circuit found the workers were not bound by this agreement, however, because: (1) Louisiana law authorized a direct action against the insurer; and (2) the FAA did not require arbitration where the parties had not agreed to do so. Id. at 346.

Zimmerman is unpersuasive here, however, for several reasons.  First, no Georgia law provides for a direct action by Glades against Mylan under these circumstances.  Moreover, the Eleventh Circuit has clearly provided exceptions to the rule that only parties who agree to arbitrate are bound by the FAA.  In MS Dealer Service Corp. v. Franklin, 177 F.3d 942, 947 (11th Cir. 1999), the court offered several circumstances in which lack of a written agreement between the parties would not be an impediment to arbitration.  One such exception exists where, "under agency or related principles," a signatory and non-signatory are "sufficiently close that only by permitting the nonsignatory to invoke arbitration may evisceration of the underlying arbitration agreement between the signatories be avoided."  Id.  Although MS Dealer addressed only situations where a non-signatory attempts to enforce arbitration against a signatory, another circuit court has applied this principle in an instance where the signatory seeks to compel arbitration against a party that did not agree to do so.  In re Oil Spill by Amoco Cadiz Off Coast of France March 16, 1978, 659 F.2d 789 (7th Cir. 1981), two plaintiffs–Amoco International ("International") and Amoco Transport ("Transport")–brought a lawsuit against a salvage company for negligence and related claims arising out of the company's failed attempt to tow one of Transport's crude oil carriers.  The defendant moved for arbitration of the dispute, arguing that it had entered into a salvage agreement with

Transport that included an arbitration provision. International disputed the application of this arbitration provision to its claims, however, arguing that because it had never entered into any agreement with the defendant, it had the right to have its claims heard in a judicial forum. The court concluded that:

> It would advance neither judicial economy nor the purposes of the federal arbitration act to permit International to assert in a judicial forum claims grounded upon its alleged relationship to Transport and to allow it to disavow the relationship for purposes of arbitration, or to allow Transport to defeat the effect of an arbitration agreement by joining a nonsignatory as a party-plaintiff in its complaint.

Id. at 796. The Seventh Circuit thus found that because International's alleged stake in the lawsuit arose out of its agency relationship with Transport, both plaintiffs were bound by the arbitration agreement.

The rationale of In re Oil Spill weighs in favor of the Defendant in this case. Cunard and Mylan entered into an employment contract that included a valid arbitration provision. They agreed that Mylan could submit to arbitration any dispute arising out of that agreement. Glades' only interest in this contract arises out of its employment of Cunard. Without that employer-employee relationship, Glades would not have standing to challenge this agreement. See Focus on the Family v. Pinellas Suncoast Transit Authority, 344 F.3d 1263, 1272 (11th Cir. 2003) (stating that to have standing, a plaintiff must demonstrate an "injury in fact," or "an invasion of a legally protected interest which is ⋯ concrete and particularized") (quoting Lujan v.

<u>Defenders of Wildlife</u>, 504 U.S. 555, 560-61 (1992)).  Thus, the Plaintiff can hardly argue that its claims are independent of its relationship with Cunard.

It would not serve the FAA's purpose to allow an employee to avoid the statute's application by enlisting his new employer to file a lawsuit on his behalf. Furthermore, permitting resolution of the Plaintiff's claims in this Court and Cunard's claims in West Virginia would prove counter to the interests of judicial economy and might result in "varying decisions, discreditable to the administration of justice." <u>See</u> <u>LaSonde</u>, 273 Ga. App. at 115.  Accordingly, the Court finds that the Plaintiff's claims are subject to the arbitration clause in Cunard's employment agreement.  Pursuant to § 3 of the FAA, these proceedings must be stayed pending the outcome of arbitration.

B. <u>Plaintiff's Motion for Sanctions</u>

The Plaintiff has also filed a motion for sanctions alleging that the Defendant and its counsel knowingly and recklessly sought to delay or dismiss this action by misrepresenting material facts.  The Plaintiff argues that sanctions should be imposed against the Defendant under 28 U.S.C. § 1927.  According to the statute:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

Id.  Sanctions under 28 U.S.C. § 1927 are appropriate where the misrepresentations made by an attorney constitute bad faith, rather than mere negligence.  Schwartz v. Millon Air, Inc., 341 F.3d 1220, 1225 (11th Cir. 2003).

For the purposes of analyzing this motion, the relevant facts are as follows:  The Defendant filed a motion to compel arbitration in the West Virginia state court. During a hearing before that court, Michael W. Casey, III represented Cunard and told the judge: "I also represent Glades Pharmaceuticals, Mr. Cunard's new employer." (Def.'s Reply to Pl.'s Response to Def.'s Motion to Dismiss, Ex. B-9, at 6.)  He went on to refer to several of his arguments as "our position" and told the court at one point that he was "speaking on behalf of Glades."  (Id., at 8.)  On May 31, Mylan filed a verified amended complaint in the West Virginia court adding Glades to the proceedings.  Therein, the Defendant's attorney stated that "Glades' attorneys have already made an appearance before this court." (Id., Ex. B-13, at 2.)  The Defendant then stated in its brief in support of its Motion to Dismiss or Stay that Glades had "appeared" in the West Virginia court.  The brief further stated that Glades was "before" the court and that Glades had been "joined" in the pending suit.  Finally, at a June 5, 2006 hearing on the Plaintiff's Motion for a Temporary Restraining Order, the Defendant's attorney, Michael Johnston, inaccurately stated that Glades, rather than Cunard, had made a discovery request in the West Virginia proceedings.  He

further asserted that Glades was litigating the same issues in this Court as Cunard and Mylan were litigating in West Virginia.

Glades now asserts that Mylan falsely represented to this Court: "that Glades has 'appeared' in the West Virginia proceeding; that Glades has been served with process and 'joined' as a party to the West Virginia proceeding; that Glades has claims pending in West Virginia; and that Glades' claims herein are identical to any claim that is pending in West Virginia." (Pl.'s Mot. for Sanctions, at 2.)  The Plaintiff also cites as sanctionable Johnston's statement at the June 2006 hearing before this Court.  None of these statements constitute sanctionable misconduct.  The Plaintiff has not shown that any of them were made in bad faith or with an intent to vexatiously increase litigation.  The motion for sanctions should never have been filed.

### C. Motion for Reconsideration

The Plaintiff also moves pursuant to Federal Rule of Civil Procedure 60(b) and Local Rule 7.2(E) for this Court to reconsider its Order denying the Plaintiff's Motion for a Temporary Restraining Order.  Rule 60(b) allows the Court to relieve a party from a final order where it finds, inter alia, "mistake, inadvertence, surprise, or excusable neglect."  The Plaintiff thus asks this Court to change language in the Order stating that Glades has claims pending in the West Virginia arbitration proceeding.

Amending this language will not provide any relief to the Plaintiff.  This motion is denied.

### III. <u>CONCLUSION</u>

For the reasons set forth above, the Defendant's Motion to Stay the Proceedings [Doc. 4] is GRANTED.  The Motion to Dismiss and Motion to Compel Arbitration [Doc. 4] are DENIED.  The Plaintiff's Motion for Sanctions [Doc. 13] is DENIED, and the Plaintiff's Motion for Reconsideration [Doc. 18] is DENIED.  The Clerk is directed to close this case administratively.  The case may be reopened after the completion of the arbitration proceedings.

SO ORDERED, this 14 day of September, 2006.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge